HULSE & GERMANO, ESQS., L.L.C.
George H. Hulse (GH9222)
Gracy H. Hulse (GH6588)
406 High Street
Burlington, NJ   08016
Telephone: (609) 387-5300
Facsimile : (609) 387-9169
Attorneys for Plaintiffs Eric and Susan Rosner

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| ERIC ROSNER and SUSAN ROSNER,<br><br>                           Plaintiffs,<br><br>v.<br><br>THOMAS GERGLEY, LISA BELLINI,<br>individually and as husband and wife,<br>MARK GOLOB, SUZAN ZAGER,<br>individually and as husband and wife,<br>TAYLOR GOLOB, JANE DOE<br>GOLOB, individually and as husband<br>and wife,<br><br>                          Defendants. | CIVIL ACTION NO.<br><br>VERIFIED COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs, by way of this Complaint, allege the following upon personal knowledge as to themselves and their acts and as to all other matters upon information and belief.

<div align="center">

**THE PARTIES**

</div>

1.      The Plaintiffs, ERIC ROSNER and SUSAN ROSNER ("Plaintiffs" or "ROSNERS"), are, and at all times relevant hereto were, residents of the State of New Jersey whose address is 2 Split Rock Place, Moorestown, New Jersey.  The ROSNERS are husband and wife and purchasers of an Area Representative franchise to be operated in the State of New Jersey from

BUTTERFLY FITNESS, INC. d/b/a Butterfly Life ("BFL").

2.     Defendants, THOMAS GERGLEY and LISA BELLINI, are, and at all times relevant hereto were, residents of the State of California, whose address is believed to be 242 Lyndhurst Place, San Ramon, California.  THOMAS GERGLEY and LISA BELLINI and are husband and wife, constituting a marital community under the laws of the State of California.  THOMAS GERGLEY is a founding shareholder of BFL, doing business as Butterfly Life in San Ramon, Contra Costa County, California, and at all times material hereto, LISA BELLINI, was Executive Director of Nutritional Services for BFL.  All acts and omissions of THOMAS GERGLEY and/or LISA BELLINI alleged herein were performed both individually and on behalf of their marital community.

3.     Defendants, MARK GOLOB and SUZAN ZAGER, are, and at all times relevant hereto were, residents of the State of California, whose address is believed to be 85 Sleepy Hollow Lane, Orinda, California.  MARK GOLOB and SUZAN ZAGER are husband and wife, constituting a marital community under the laws of the State of California.  MARK GOLOB is a founding shareholder of BFL, doing business as Butterfly Life in San Ramon, Contra Costa County, California, and at all times material hereto served as its President and/or CEO and promoter.  At all material times hereto, SUSAN ZEIGER was Director of Marketing for BFL.  All acts and omissions of MARK GOLOB and SUSAN ZEIGER alleged herein were performed both individually and on behalf of their marital community.

4.     Defendants, TAYLOR GOLOB and JANE DOE GOLOB, if she exists, are, and at all times relevant hereto were, residents of San Ramon, Contra Costa County, California, and are husband and wife, constituting a marital community under the laws of the State of California.  Their specific mailing address is unknown at this time.  TAYLOR GOLOB is a founding shareholder of BFL, doing business as Butterfly Life in San Ramon, Contra Costa County, California, and at all

times material hereto served as its Franchise Sales Executive and/or Vice President of Business Development and Interactions. All acts and omissions of TAYLOR GOLOB alleged herein were performed both individually and on behalf of his marital community.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332. The matter in controversy exceeds the sum of $150,000.

6.  Venue is proper in this district pursuant to 28 U.S.C. §1391(a). As alleged herein, a substantial part of the events or omissions giving rise to the claims asserted occurred within this district.

7.  In connection with the acts, conduct and violation of law detailed in this Complaint, Defendants, at all relevant times, directly and indirectly, utilized means and instrumentalities of interstate commerce, including the mails (regular and e-mail), telephone communications and wire transfers.

## BACKGROUND

8.  Plaintiffs repeat and incorporate by reference the allegations set forth in each of the paragraphs above as though set forth at length herein.

9.  On or about April 18, 2003, THOMAS GERGLEY and MARK GOLOB incorporated Butterfly Fitness, Inc. doing business as Butterfly Life ("BFL") in San Ramon, Contra Costa County, California, to own and develop the franchise business of fitness clubs for women only.

10. At all material times THOMAS GERGLEY, MARK GOLOB, and TAYLOR GOLOB offered and sold BFL Area Representative franchises and BFL Center (or club) franchises to Plaintiffs.

11. Pursuant to the offer and sale of BFL Area Representative and/or Center

franchises to Plaintiffs, Defendants provided to each Plaintiff a BFL Uniform Franchise Offering Circular ("UFOC") containing numerous untrue or misleading statements of material fact, including but not limited to:

    a.    "Linda Evans Fitness Centers" is a d/b/a of Women's Workout and Weight Loss Centers, Inc. ("WWWLC");

    b.    All WWWLC centers were sold or converted to BFL Centers;

    c.    BFL grants franchises to operate Butterfly Life Centers to qualified persons to own and operate fitness centers;

    d.    BFL sales are not seasonal;

    e.    Franchise BFL Centers may have to compete with other company-owned BFL Centers;

    f.    BFL will use monthly franchise advertising fees to coordinate national advertising;

    g.    BFL does not derive revenue or material consideration from the sale to franchisees of inventory or other required purchases.

    h.    BFL centers will offer nutritional and weight-loss supplements.

12.    Pursuant to the offer and sale of BFL Area Representative and/or Center franchises to Plaintiffs, Defendants provided to each Plaintiff a BFL UFOC that omits material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the following:

    a.    That WWWLC and LEFC failed, ceased business and were dissolved;

    b.    That most, if not all, of the work product of SUZAN ZAGER, LISA BELLINI, and Denny Marsico for which BFL paid and would continue to pay was previously created and/or produced for WWWLC, LEFC and/or 24 Hour Fitness;

c.     That Linda Evans sued for fraud, forgery and other wrongful conduct WWWLC, LEFC, THOMAS GERGLEY and MARK GOLOB, resulting in the payment by Defendants of money to Linda Evans. Furthermore, Defendants implied and insinuated there were successful products, when in fact the entities had failed and the products were not successful; Defendants represented that these products were created exclusively for BFL, when in fact they were all created for WWWLC, LEFC and/or 24 Hour Fitness.

d.     MARK GOLOB represented that Mark Mastrov was the funding source for BFL when in fact Mark Mastrov was no longer with BFL and subject to a non-compete agreement prohibiting his participation in BFL for some undisclosed period of time.

13.     The untrue or misleading statements and/or omissions of BFL UFOCS detailed above were intentional, oppressive, fraudulent and malicious to Plaintiffs.

### ROSNERS

14.     Plaintiffs repeat and incorporate by reference the allegations set forth in each of the paragraphs above as though set forth at length herein.

15.     The ROSNERS as a result of Defendants' sales pitches, which included untrue and misleading statements, purchased a BFL Club Franchise for Fifty Thousand Dollars ($50,000) in February 2006. The ROSNERS, in continued reliance on Defendants' sales pitches and other continuing untrue and misleading statements, later converted the purchase to a BFL Area Representative Franchise to be operated in the State of New Jersey for an additional Two Hundred Thousand Dollars ($200,000) in March 2006.

16.     Prior to purchasing the BFL franchises, the ROSNERS received from Defendants a BFL UFOC containing the untrue or misleading statements or omissions detailed in the

5

paragraphs above.

17.     The ROSNERS relied upon the untrue or misleading statements or omissions contained in the BFL UFOC when they purchased the BFL franchises to their detriment.

18.     Defendants identified herein also made the following additional untrue or misleading representations of existing fact:

19.     THOMAS GERGLEY, MARK GOLOB, and TAYLOR GOLOB, made representations to prospective franchisees of the BFL franchise system, including Plaintiffs, which were false and/or misleading during the sales process of franchises under the BFL system. Specifically, THOMAS GERGLEY, MARK GOLOB, and TAYLOR GOLOB, represented and acted as follows.

20.     On or about January 31, 2006, the ROSNERS, as prospective franchisees, attended a BFL seminar in Atlantic City, New Jersey, at which TAYLOR GOLOB put on a presentation, including an oral narrative, slide show and a video presentation, and at which MARK GOLOB appeared through a video chat link.

The oral narrative and slide show included the following representations:

   a.     TAYLOR GOLOB stated: "We will also show you the cost associated with opening a club . . ."

   b.     TAYLOR GOLOB stated:

These are the costs associated with opening a Butterfly Life Center. If you decide to purchase one to two (1-2) units , the cost is Twenty-Nine Thousand Five Hundred Dollars ($29,500) each. If you would like to purchase three to nine (3-9) unites, you would be considered an area developer and the cost of each unit is reduced by Three Thousand Five Hundred Dollars ($3,500) or the total cost of Twenty Six Thousand

6

Dollars ($26,000) per unit. By putting down a small deposit, you're able to secure three (3) clubs for Fifty Thousand Dollars ($50,000). Now we don't require you to open them all at the same time; we'll put you on a graduated time table . . . we will give you more than enough time to get those clubs open. If you would like to purchase ten (10) clubs or more, you would be considered an area representative and the price is further reduced to Twenty-Four Thousand Dollars ($24,000) per unit.

We charge a monthly royalty fee which is a flat fee of One Thousand Dollars ($1,000) a month. So this model shows a range of Sixty-Five Thousand Dollars ($65,000) for the franchise fee and the build out and opening costs. Additionally, you will want some reserve capital until your club breaks even. So that's what you really want to position yourself for if you plan on opening a club. We do have financing options available where you can lease almost everything inside of your club for a monthly payment . . . you can talk to one of our franchise counselors one-on-one on how easy this is to get it started.

We say that it takes roughly Eight Thousand Dollars ($8,000) a month to operate a club; so if you charge Thirty-Nine Dollars ($39) per month for each membership, or let's use simple math of Forty Dollars multiplied times Two Hundred members ($40 x 200) would get you Eight Thousand Dollars ($8,000) or break even. Now, do bear in mind that those numbers are taken from California, it will vary dramatically from one geographical location to another.

     c.     TAYLOR GOLOB stated:

Why purchase a Franchise?

Well franchise sales exceed One Trillion Dollars in the United States . . . forty percent (40%) of all sales are done by a Franchise. But, the key statistic that I draw our attention to is that ninety percent (90%) of franchise businesses are still operating after ten (10) years while only eighteen percent (18%) of independent businesses are still in operation. So it just goes to show you that by purchasing a Franchise you are buying a proven method of operating a business. We have a turnkey system so that if you follow our formula, you can be successful.

      d.    TAYLOR GOLOB further stated: "Additionally, as you can see by this aerial shot, one person can operate the club as it is a push and play operation."

    21.    During the week of January 31, 2006, Eric Rosner also attended two other BFL seminars, one in Cherry Hill, New Jersey, and another in Philadelphia, PA. At each seminar, the same oral presentation, slide presentation, and video chat presentation was made as more fully described above.

    22.    Additionally, at each seminar TAYLOR GOLOB and/or CHERYL HOKE represented that:

      a.    Break-even occurs within three to four (3 - 4) months with only two hundred (200) members; and

      b.    Butterfly Clubs are profitable within six (6) months of opening.

    23.    These representations were false and/or misleading in that, upon information, and belief, few if any BFL franchises are making a sustained profit, and certainly not at two hundred (200) members, and not within six (6) months. Break even is more likely to occur at three hundred fifty (350) members, if at all.

    24.    In or about February 2006, the ROSNERS, in reliance on the above described representations, signed a Franchise Agreement for three (3) BFL clubs.

25. In or about March 2006, the ROSNERS, attended BFL training.

26. In or about March 2006, the ROSNERS, were approached by MARK GOLOB and TAYLOR GOLOB, who suggested that the ROSNERS might want to consider becoming BFL Area Representatives.

27. In or about March 2006, the ROSNERS met with MARK GOLOB. MARK GOLOB stated that for the sum of money the ROSNERS were planning on spending to open their three (3) clubs under the above referenced BFL Franchise Agreement, they could spend less money and make more money if they became Area Representatives for BFL. At this meeting MARK GOLOB told the ROSNERS they could make two million five hundred thousand dollars ($2.5 million) as Area Representatives. MARK GOLOB outlined how much money could be made using the info in the UFOC, relating to the cost of a club and the royalty payments over a ten (10) year period.

28. These representations were false and/or misleading in that MARK GOLOB failed to disclose the basis for said representations as required by 16 C.F.R. 436 *et seq.*, and MARK GOLOB had no reasonable basis for believing said representations to be true.

29. In or about February 2006, based on all the representations made above prior to entering into the three (3) club BFL Franchise Agreement, and based on the representations made regarding the Area Representative opportunity, as more fully described above, the ROSNERS executed an Area Franchise Agreement with BFL, and BFL and the ROSNERS agreed to void the three (3) club BFL Franchise Agreement.

**COUNT I**
**COMMON LAW FRAUD**
**(Against all Defendants)**

30. Plaintiffs repeat and incorporate by reference the allegations set forth in each of

the paragraphs above as though set forth at length herein.

31.     Defendants and each of them made numerous material misrepresentations of past and presently existing facts to the Plaintiffs, and the Defendants, and each of them, knew the falsity of those representations.

32.     Defendants' material misrepresentations were made knowingly to the Plaintiffs with the intention that the Plaintiffs rely upon those material misrepresentations to their detriment.

33.     Plaintiffs did reasonably rely upon Defendants' material misrepresentations when they entered into the BFL Franchise/Area Representative Agreements and invested substantial sums of money into those Franchises.

34.     Defendants also knowingly concealed existing material facts from the Plaintiffs prior to the Plaintiffs entering in their BFL Franchise/Area Representative and/or Guaranty Agreements to further induce the Plaintiffs into executing said Agreements, and will full knowledge that disclosure of such material facts would cause the Plaintiffs not to proceed with the transactions.

35.     Plaintiffs would not have entered into the BFL Franchise/Area Representative and/or Guaranty Agreements and proceeded to invest substantial sums of time, effort and money in the BFL franchise but for the material misrepresentations and purposeful concealment of material facts by the Defendants.

36.     Defendants acted intentionally, willfully and/or recklessly and with wanton disregard for the rights of the Plaintiffs in the making of the material misrepresentations and engaging in the deceptive conduct described above.

37.     As a direct, proximate and foreseeable result of Defendants' fraudulent conduct,

Plaintiffs have suffered substantial damages, and are entitled to compensatory and punitive damages.

WHEREFORE, Plaintiffs respectfully demand entry of judgment against Defendants, jointly, severally, and alternatively in an amount in excess of the jurisdictional limit of this Court, together with punitive damages, attorneys fees, costs and such other relief as is just and proper.

<div align="center">

**COUNT II**
**NEGLIGENT MISREPRESENTATIONS AND OMMISSIONS**
**(Against all Defendants)**

</div>

38.     Plaintiffs repeat and incorporate by reference the allegations set forth in each of the paragraphs above as though set forth at length herein.

39.     Defendants negligently made the above referenced misrepresentations of material facts to the Plaintiffs.

40.     Plaintiffs justifiably relied upon Defendants' negligent misrepresentations when they executed the BFL Franchise/Area Representative and/or Guaranty Agreements and invested substantial sums of time, effort and money into the BFL franchise.

41.     But for the negligent misrepresentations of the material facts made by the Defendants, Plaintiffs would not have executed the BFL Franchise/Area Representative and/or Guaranty Agreements.

42.     Defendants also negligently omitted material facts from its representations to the Plaintiffs prior to Plaintiffs entering into the BFL Franchise/Area Representative and/or Guaranty Agreements.

43.     Plaintiffs justifiably relied upon Defendants' negligent omissions of material facts when they executed the BFL Franchise/Area Representative and/or Guaranty Agreements

<div align="center">11</div>

and invested substantial sums of time, effort and money into the BFL franchise.

44.     Plaintiffs would not have entered into the BFL Franchise/Area Representative and/or Guaranty Agreements and proceeded to invest substantial sums of time, effort and money into the BFL franchise but for the negligent omission of material facts by Defendants.

45.     As a direct, proximate and foreseeable result of Defendants' negligent conduct, Plaintiffs have suffered substantial damages, and are entitled to compensatory and punitive damages.

WHEREFORE, Plaintiffs respectfully demand entry of judgment against Defendants, jointly, severally, and alternatively in an amount in excess of the jurisdictional limit of this Court, together with punitive damages, attorneys fees, costs and such other relief as is just and proper.

## COUNT III
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (Against all Defendants)

46.     Plaintiffs repeat and incorporate by reference the allegations set forth in each of the paragraphs above as though set forth at length herein.

47.     The conduct of the Defendants, as more fully alleged above, constitutes deceptive sales practices as defined by the New Jersey Consumer Fraud Act, N.J. STAT. ANN. 56:8-1, *et seq.* ("NJCFA").

48.     The deceptive sales practices were engaged in by the Defendants and each of the Defendants are individually and collectively liable for said violations of the NJCFA.

49.     As a direct and proximate result of the Defendants' deceptive sales practices, as heretofore described, Plaintiffs have been damaged and injured, and have suffered an ascertainable loss as defined in the NJCFA.

WHEREFORE, Plaintiffs respectfully demand entry of judgment against Defendants, jointly, severally, and alternatively in an amount in excess of the jurisdictional limit of this Court, together with treble damages, attorneys fees, costs and such other relief as is just and proper.

<div align="center">

**COUNT IV**
**VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Defendants Thomas Gergley, Mark Golob and Taylor Golob)**

</div>

50.     Plaintiffs repeat and incorporate by reference the allegations set forth in each of the paragraphs above as though set forth at length herein.

51.     Upon information and belief, Defendants THOMAS GERGLEY and MARK GOLOB engaged in self-dealing loans to themselves using BFL funds obtained from Plaintiffs and other franchisee's fees, and otherwise wrongfully profited personally from Plaintiffs payments to BFL.

52.     At all material times THOMAS GERGLEY, MARK GOLOB and TAYLOR GOLOB were employed by and received compensation from BFL.

53.     Upon information and belief, THOMAS GERGLEY, MARK GOLOB and TAYLOR GOLOB, and each of them, used Plaintiffs' and other franchisee's funds to take unreasonable salaries and expenses or other payments for regurgitating BFL work product previously produced for WWWLC, LEFC and/or 24 Hour Fitness, or for work for which the particular Defendant was not appropriately qualified.

54.     The payment of Plaintiffs' and others' franchisee fees to the individual Defendants through unreasonable salaries and expenses or other payments violates the covenant of good faith and fair dealing imposed by the BFL Franchise/Area Representative and/or Guaranty Agreement entered into by the Plaintiffs and others.

<div align="center">13</div>

55.     The conduct engaged in by the Defendants was intentional, in bad faith and deprived the Plaintiffs of the benefit of their bargain.

WHEREFORE, Plaintiffs respectfully demand entry of judgment against Defendants THOMAS GERGLEY, MARK GOLOB and TAYLOR GOLOB, jointly, severally, and alternatively in an amount in excess of the jurisdictional limit of this Court, together with punitive damages, attorneys fees, costs and such other relief as is just and proper.

<div align="center">

**COUNT V**
**VIOLATION OF NEW JERSEY UNIFORM FRAUDULENT CONVEYANCE ACT**
**(Against Defendants Thomas Gergley, Lisa Bellini, Mark Golob and Suzan Zager)**

</div>

56.     Plaintiffs repeat and incorporate by reference the allegations set forth in each of the paragraphs above as though set forth at length herein.

57.     Upon information and belief, following the unlawful conduct alleged in the Complaint, Defendants THOMAS GERGLEY and LISA BELLINI transferred substantial individual assets into a trust without fair consideration and with the intent to defraud the Plaintiffs.

58.     Defendant THOMAS GERGLEY's and LISA BELLINI's transfer of substantial individual assets into a trust is an attempt to deny Plaintiffs' recovery for Defendants' unlawful conduct alleged herein.

59.     Upon information and belief, following the unlawful conduct alleged in this Complaint, Defendants MARK GOLOB and SUZAN ZAGER transferred substantial individual assets into a trust without fair consideration and with the intent to defraud the Plaintiffs.

60.     Defendant MARK GOLOB's and SUZAN ZAGER's transfer of substantial individual assets into a trust is an attempt to deny Plaintiffs' recovery for Defendants' unlawful conduct alleged herein.

61.     The transfers by Defendants THOMAS GERGLEY, LISA BELLINI, MARK GOLOB and SUZAN ZAGER constitute fraudulent transfers under the Uniform Fraudulent Transfer Act, N.J. Stat. Ann §§ 25:2-20 *et seq.*

WHEREFORE, Plaintiffs respectfully demand entry of an order against Defendants THOMAS GERGLEY, LISA BELLINI, MARK GOLOB and SUZAN ZAGER:

(1) Avoiding Defendants transfers into their respective trusts, or other unlawful transfers;

(2) Attaching the trust funds, or other assets unlawfully transferred;

(3) Enjoining further disposition of the funds transferred; or

(4) Any other relief this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in the action for all claims against all Defendants so triable.

Dated this 27 day of July, 2009          Respectfully submitted,

**HULSE & GERMANO, ESQS., L.L.C.**

By: _____

GEORGE H. HULSE, ESQ.

## VERIFICATION

We, Eric Rosner and Susan Rosner, verify the following under the penalties of perjury and the laws of the United States.

We are the Plaintiffs in the within matter and have made the foregoing Verified Complaint. The facts therein are true and correct to the best of our knowledge.

Dated this 24 day of July, 2009.

_____          _____
ERIC ROSNER                                              SUSAN ROSNER


## CERTIFICATION

I, George H. Hulse, Esq., do hereby certify that:

1.      I am the Attorney for Plaintiffs Eric Rosner and Susan Rosner in the foregoing Complaint.

2.      To the best of my knowledge and belief, this matter in controversy involves money damages only, where recoverable damages exceed $150,000.

3.      To the best of my knowledge and belief, this matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding.

4.      To the best of my knowledge and belief, there are no other parties who must be joined in this action.

I hereby certify that the forgoing statements made by me are true. I am aware that if any of the foregoing statements made by are wilfully false, I am subject to punishment.

Dated this 27 day of July, 2009.

_____
GEORGE H. HULSE, ESQ.

16